### BASS *v.* HARDEN *et al.;* and *vice versa.*

1. Where an equitable suit was brought for injunction and other relief against a named party and "his confederates," but the confederates were not named, and where the petitioner, in an amendment filed subsequently to the filing of the original petition, alleged that one of the confederates of the named defendant was a certain designated party, but no order was taken to make this designated person a party to the suit, and he was not served in the suit and no attempt was made to make him a party defendant, and he did not appear in the case, he was not an essential party defendant to the bill of exceptions sued out by the plaintiff to the judgment of nonsuit.
2. Under the evidence in the case the court did not err in awarding a nonsuit.

Nos. 4608, 4648. May 14, 1925.

Equitable petition. Before Judge Park. Hancock superior court. September 23, 1924.

*Sibley & Sibley,* for plaintiff.

*T. M. Hunt* and *G. L. Dickens,* for defendants.

Beck, P. J. The petitioner, W. A. Bass, claimed that he owned a large tract of land in Hancock County, and that the defendants, Joe Harden and others, were assembling thereon and crossing plaintiff's land and wiring up his private way in and to the same, and driving vehicles over same, cutting down bushes and shrubbery and burying dead bodies thereon, and also slandering his title. Insolvency of the defendants was alleged. And, further, it is claimed that the defendants seek to justify their acts under a decree of court and are acting as trustees and officers of the African

Methodist Episcopal Church. Plaintiff claims there is no decree of court describing any land as that trespassed upon, and that "the locus in quo is not the land ·described in or identical with that of the decree, and plaintiff offers to do equity by tendering to these officers of the church any money that he may have received from the church, if the court should ascertain that the decree is incapable of application to any particular tract of land, and that there is no such lot as that in the decree." At the conclusion of the evidence for the plaintiff the court granted a nonsuit, and the plaintiff excepted.

1. A motion is made ·to dismiss the writ of error, upon the ground that one Ben Wilson was a party defendant in the litigation in the court below, and that he is a necessary, indispensable party defendant to the bill of exceptions, but that he has not been made a party defendant thereto and has not been served with a copy of the bill of exceptions and has not acknowledged service thereon, as required by law. The motion to dismiss is without merit. The defendants in the case, named in the original petition, are Jere Moseley, Joe Harden, and "other confederates." No confederates are named in the original petition. Subsequently to the filing of the original petition plaintiff amended the same by alleging that "one defendant designated as 'confederates' in the petition consists of the trustees of said church, the names of all of whom are known to ·defendant Harden, but unknown to plaintiff, one of whom is Ben Wilson." It does not appear that any order was taken making Ben Wilson a party, nor was there any attempt to make him a party more than this reference to him in the amendment, and it does not appear that he was served; nor did he appear and defend the case. Under these circumstances he would not have been bound by a judgment in favor of the plaintiff, and is not a necessary party defendant to the bill of exceptions.

2. It appears from the amended petition in the case that Joe Harden, defendant, in the commission of the acts complained of was acting ' as trustee and steward of the African Methodist Episcopal Church Incorporated, the church being specifically known by the name of Devereux Mission Church, Harden being the chairman of the board of trustees of the church. The officers of the church and its members claim a tract of land containing two acres by virtue of a decree of the superior court, contending that all

26

of the acts done were upon the land described in the decree. The plaintiff insists, while he does not now contest the validity of that decree, that it is inapplicable to the tract of land in question, or any other tract of land. In litigation instituted and determined prior to the present suit this church had brought its action against Bass, the plaintiff in the present suit, for specific performance of a contract for the conveyance of the land in question to the church. In its petition filed in that case the church alleged that it was in actual possession of a church house and the land on which the same is situated in Hancock county for more than forty years; that its possession was permissive until November 5, 1913, on which date it entered into a contract with the defendant to purchase the church house and land on which the same was situated. The land was described as follows: "The same fronting on the Sparta and Milledgeville public road; the amount of land to be conveyed to be two (2) acres; the boundaries of said two acres of land to begin at a certain designated pine tree on the Sparta and Milledgeville public road, just to the right of the road leading from said public road to the church house, and to run at right angles from a corner in the rear of the church house towards the Sparta and Milledgeville public road and parallel with the boundary line leading from Sparta and Milledgeville public road back to the Milledgeville and Sparta public road, and thence along the line of said road towards Sparta, to the pine tree on said public road at the beginning point; the church house to be in the center of the two acres of land." *Bass* v. *A. M. E. Church,* 150 *Ga.* 452 (104 S. E. 437). It was also alleged in the petition that since the date of its purchase the church had remained in possession of the land, that it had paid the full amount of the purchase-money, and the defendant failed and refused to execute a deed in accordance with the contract; further, that since the payment of the money the defendant, Bass, had entered upon the premises, destroyed trees upon the church grounds, removed the steps from the church building, and had attempted to exclude petitioner from possession. The prayer was that the title to the two-acre tract for church and school purposes be decreed to be in petitioner, and that defendant be enjoined from interfering with petitioner's possession, and that plaintiff recover damages for the trespass. To this petition the defendant, Bass, demurred generally and specially.

This demurrer was overruled, and Bass excepted, bringing the case to this court for review. While the judgment of the court below was reversed, the court held, in that opinion, that under the allegations of the petition the contract which the plaintiff sought to have specifically performed "is certain and definite in all the particulars essential to its enforcement." A decree. in favor of the church establishing its title to the tract of land described in that petition was entered in Hancock superior court. In the decree the land is described as it is in the petition. A writ of possession directed to the sheriff of the county was issued in pursuance of the decree. This writ of possession was executed on the 29th day of May, 1923, and the return of the sheriff is as follows:

"Georgia, Hancock County. Executed the within writ by putting the plaintiff in quiet possession of the premises therein described, to wit: two acres of land including the land on which the church building is situated. This the 29th day of May, 1923.

J. M. Jackson, Sheriff Hancock County, Ga."

(Plat attached.)

"Georgia, Hancock County: The above plat represents the Devereux Mission Church lot, containing two acres, situate about six miles west of the city of Sparta, on the public road leading from Sparta, Georgia, to Milledgeville, Ga. Surveyed May 29th, 1923.

Sam P. Turner, Surveyor, White Plains, Ga."

But plaintiff's counsel insist that the description of the lot of land for which the writ of possession issued is inapplicable to the lot of land in question and to which the church claims title, basing

their contention upon the wording of the decree. It does appear that there is some difficulty necessarily involved in marking out two acres of land having the boundaries described in the action for specific performance, referred to above and in the decree and in the writ of possession, and we think the defendant, Bass, in the action for specific performance had strong grounds to contest the sufficiency of the description of the land. But this court, in the case of *Bass* v. *A. M. E. Church,* supra, after considering all the terms of the description, held: "It is clear that the land has a definitely described starting-point. A surveyor would have no difficulty in locating such point from the description given in the contract, with the aid of competent extrinsic evidence. The further terms of the description given do not present such a case of uncertainty or patent ambiguity on their face as will authorize the court to dismiss the petition on demurrer." And this ruling was followed in *Bass* v. *A. M. E. Church,* 155 *Ga.* 57 (116 S. E. 816). And so it now stands adjudicated that this description is sufficient, and that it is applicable to the tract of land upon which the African Methodist Episcopal Church is situated. And it seems to us that while there is difficulty in applying the description to this lot of land, it is not impossible to do so if we give to certain terms in the description the meaning which is often given to those terms in general use. If you will draw a line representing the Sparta and Milledgeville road, then locate the point on this line where the pine stump mentioned in the description stands, thence at right angles to the road draw a line of indefinite length, this line will bound the two acres of land on the northeast. The exact length of this northeastern boundary is not mentioned, as it would have been better to do, but the northern (northwestern) boundary line is described as running parallel to the Sparta and Milledgeville road (the line first drawn). To ascertain the distance of this northern (northwestern) boundary, which is parallel to the Sparta and Milledgeville road, inasmuch as we are not given the point on the northeastern boundary line where it should start, we must find the corner referred to in the description as being "in the rear of the church house." This corner was found and marked by an iron peg or a piece of iron pipe. There is no difficulty here, if we give to the expression "in the rear of the church house" the meaning which it might well have, that this

corner is back further from the public road than the church build-
ing itself, and not limit it to meaning such a spot as would be
directly in the rear of the church from one standing in the public
road in front of the church. Having thus located the north-
western corner, a line parallel to that representing the public road
could be traced back so as to intersect the line representing the
northeastern boundary; and then, by drawing another line parallel
to the northeastern boundary to the public road, we will have com-
pleted the boundary of the tract of two acres.

But there is another objection raised by the plaintiff in error to
this application of the description in the decree, and which is to
be found in the suit for specific performance referred to above;
and that is, that the church house is described as being "in the
center of the two acres of land;" and it is strongly urged that the
boundaries which we have outlined above are inconsistent with this
other term of description, "the church house to be in the center of
the two acres of land." There is evidence to show that it is not
and can not be exactly in the center of the two acres, with the
boundaries described above. But it will do no violence to rec-
ognized rules of construction to hold that the word *center* here
does not necessarily mean, and is not necessarily limited to, the
precise geographical or mathematical center. We can and should,
in view of the former adjudication of this court holding the de-
scription of the land to be sufficient, give to the word *center* a
sense in which it is used in common parlance; that is, the term
means here "middle or central point or portion of anything." 11
C. J. 73. And the word *central,* as used in this description, giv-
ing to the term a not unusual meaning, signifies "at or near the
center." Ib. See also Nutter *v.* Mossberg, 128 Fed. 55; Solmson
*v.* Bredin, 136 Fed. 187 (69 C. C. A. 203). Giving these terms
the meaning which we have ascribed to them, then there is no
evidence to show that the acts upon the part of the defendants,
charged to be acts of trespass upon the land of the plaintiff, were
committed upon his land. And the diagram, to be found in the
record, and to the correctness of which the plaintiff himself
testified, does not show that the defendants went beyond the limits
of the two acres of land described in the decree. Nor is there any-
thing to show that the words in disparagement of Bass's title re-
ferred to any lands that are beyond those limits. It is true that

Bass testified: "Yes, sir, I put some signs of warning on the land that 'all trespassing under penalty of the law.' I posted the land, the door too, and closed the door of the church and posted signs on the church and trees. The signs had on them, 'all trespassing positively forbidden under penalty of the law of the State of Georgia,' and signed my name and gave the date. As to this land that was closed up with the wire being in cultivation, but they [meaning defendants] closed that some time ago. The land that they closed on the west side had been in cultivation. Corn was planted in it. And the wire was on the west side where the corn had been planted. And on the other side cotton was planted. . . And when they crossed my private way with the wire that Joe Harden says he put there, they cut off my private way to get into that land from the Milledgeville and Sparta road—running the wire from the stump across my private way, I answer that I could not get into my private road without coming on them or without going around. . . Yes, sir, on the side of the Milledgeville and Sparta road, the wire cut across my private road and they closed that. . . Last year, in 1923, I had that land cultivated,—corn on that side coming from Devereux. . . As to whether I intend to tell the jury that a single strand of that wire cut off any of my cultivated land; yes, sir, that wire on the east side cut across my cultivated land, there is corn now inside that wire. . . The trespassing that I am complaining of is going to the church across my land. And also that the land they have taken is not the land described in the decree; and they are burying on the land that I claimed. They are trespassing on that piece of land; doing both. And for the reason that they have taken two acres of land that the decree does not fix according to the survey." It is to be seen from this testimony that Bass did testify that a strand of wire on the east side cut across his cultivated land; that the trespassing of which he complained was going across his land; that the land they have taken is not the land described in the decree; and he adds, "for the reason that they have taken two acres of land that the decree does not fix according to the survey." But when the survey is considered in the light of the descriptive terms contained in it, construed as we have held it should be construed, the two acres were covered by the decree. Drawing a line from the pine stump referred to at right angles to the public road

along which line the wire was stretched, it did not run across any land belonging to the plaintiff. The contentions of the plaintiff, reduced to their final analysis, mean that the description in the decree and the description adjudicated to be sufficient in the suit for specific performance is not applicable to the lot of land upon which the church is built. We have held that it was; and holding that, a judgment of nonsuit was proper, in view of all the testimony of the plaintiff and the witnesses introduced in his behalf.

*Judgment on the main bill of exceptions affirmed; cross-bill dismissed. All the Justices concur, except Gilbert, J., absent for providential cause.*