SAUM ET AL., APPELLANTS, *v*. VENICK ET AL., APPELLEES.

[Cite as Saum v. Venick (1972), 33 Ohio App. 2d 11.]

(No. 3866—Decided June 22, 1972.)

*Messrs. Talbot & Ducker* and *Messrs. Baggott, Logan & Gianuglou,* for appellants.

*Messrs. Curtner, Selva & Thornburgh, Messrs. Estabrook, Finn & McKee* and *Mr. F. Thomas Green,* for appellees.

SHERER, P. J. Plaintiff-appellant Gregory Saum, a minor, filed this action in the Common Pleas Court of Montgomery County by his father and next friend, against appellees, Isabelle B. Venick and Caryl Richards, Inc., seeking damages for personal injuries. Plaintiffs' second amended petition alleges that at the request of Venick, Gregory Saum proceeded to remove a hair dryer from Venick's automobile; that while so doing he loosened a set screw in the column of the dryer so that a tube therein would descend into the column and that as the result of the loosening of the screw, the tube, actuated by a spring, sprang upward, striking him in the eye and causing him injury.

The second amended petition alleges that Venick was

negligent in failing to warn him of the danger to be encountered in moving the hair dryer or the danger to be encountered in touching the set screw.

The second amended petition alleges further that Caryl Richards is the manufacturer of the chair and hair dryer fixture, known as Bel-Aire model B-600, serial number 15107, and engages in the business of selling the chair in Ohio and was negligent in designing the chair and in failing to warn its users of the action to be encountered in loosening the set screw and in failing to warn of the hidden dangers in the mechanism.

Caryl Richards' amended answer consisted of a general denial and set forth defenses of contributory negligence and assumption of risk. Caryl Richards also filed an amended third party complaint against Veeco, Beauty Equipment Manufacturing Company, alleging that Veeco manufactured the hair dryer and that it was not of good and merchantable quality, but contained a hidden device which, when released, was reasonably certain to cause harm to a user or handler and that if Caryl Richards was liable to plaintiffs, Veeco would be liable to Caryl Richards

Venick filed a general denial and also filed a like third party complaint against Veeco.

Veeco filed an answer to the third party complaints consisting of a general denial of the allegations of the petition of plaintiffs and of the allegations of the two complaints of the third party plaintiffs, Caryl Richards and Venick. The answer also set up the defenses of contributory negligence and assumption of risk against plaintiff Gregory Saum and the two third party plaintiffs. The answer also alleges that if the plaintiff suffered any injury or damage as alleged, such damage was caused by the intervening act or acts or omissions of parties other than Veeco superseding any action or omission by reason of which it might be considered liable to either plaintiff or either third party plaintiff, which third party defendant could not reasonably foresee and for which it could not be held liable.

The case was tried to a jury which returned a verdict in favor of Caryl Richards and against plaintiffs. The jury

returned a verdict also in favor of Veeco and against Caryl Richards on the third party complaint.

The trial court sustained Venick's motion for a judgment at the close of all the evidence.

This appeal is taken from the judgments rendered on the verdicts in favor of Caryl Richards and Venick and from the action of the trial court overruling appellant's motion for a new trial.

The first error assigned is that the trial court erred in permitting Caryl Richards to introduce evidence to impeach the answers it filed under oath to interrogatories propended by the plaintiff.

The record discloses that interrogatories were propounded to Caryl Richards by plaintiffs with respect to the hair dryer and chair in question here, and that answers thereto were made by one Frederick, assistant secretary of Faberge, Inc., a member of its legal department and successor in interest to Caryl Richards, as permitted in Civ. R. 33. The answers to the interrogatories were to the effect that Caryl Richards did not manufacture the chair; that it was manufactured for Caryl Richards by Veeco; that the vertical cylinder was part of the dryer assembly purchased from Veeco, Beauty Equipment Manufacturing Company; that the chair was designed by Rayette, Inc.; that Caryl Richards does not know of any warning label being placed on the vertical column; that Caryl Richards did not deem such warning necessary; that Caryl Richards published a catalog wherein the hair dryer and chair in question were listed or displayed; that Caryl Richards issued material to the trade wherein said chair and hair dryer fixtures were listed and a price quoted; that Caryl Richards marketed the chair and hair dryer fixture to distributors; that Caryl Richards marketed the fixture to beauty parlors direct. The evidence shows that at the time of trial Faberge, Rayette, Inc., and Caryl Richards were merged as one company.

In its defense, Caryl Richards, over objection, was permitted to introduce testimony from one Ganschinietz, General Manager of the Rayette Division of Faberge, to

the effect that Rayette did not manufacture, *design* or sell the chair in question.

Caryl Richards was thus permitted to impeach the answer of Mr. Frederick made by him on behalf of Caryl Richards to plaintiffs' interrogatories.

Plaintiffs contend that the answers of Frederick constitute judicial admissions which are binding upon Caryl Richards.

Caryl Richards contends that "judicial admissions" consist of admissions contained in pleadings and contends that answers to interrogatories under Rule 33 are not "judicial admissions."

Civ. R. 33(B) provides: "Scope and the use at trial. Interrogatories may relate to any matter which can be inquired into under Rule 26(B), and the answers may be used to the extent permitted by the rules of evidence."

Certainly, answers to interrogatories, being statements under oath by a *party* are admissible in evidence.

Caryl Richards contends that answers of a party to interrogatories may be used at trial to the same extent and for the same purpose that a party's deposition can be used under the provisions of Rule 32. Civ. R. 32(C) provides, in part:

"At the trial or hearing any party may rebut any relevant evidence contained in a deposition whether introduced by him or by any other party."

Caryl Richards cites several federal cases which held that answers to interrogatories by a party are not binding on the party but may be rebutted. Rule 33 of the Federal Rules of Civil Procedure, provides that answers of a party to interrogatories may be used to the same extent as provided in Fed. R. Civ. P. 26(d) for the use of the deposition of a party. Fed. R. Civ. P. 26(f) provides, in part:

"At the trial or hearing any party may rebut any relevant evidence contained in a deposition whether introduced by him or by any other party."

Civ. R. 33(B) provides:

"Interrogatories may relate to any matter which can be inquired into under Rule 26(B), and the answers may

be used to the extent permitted by the rules of evidence. *The party calling for such examination* shall not thereby be concluded but may rebut it by evidence.'' (Emphasis added.)

Civ. R. 33 does not limit the uses of answers to interrogatories to the use applicable to depositions in Civ. R. 32. Civ. R. 33(B) provides that such answers may be used to the extent permitted by the rules of evidence.

There is nothing in Civ. R. 33 which authorizes Caryl Richards to impeach or rebut the sworn statements of Mr. Frederick, designated by Caryl Richards to answer the interrogatories. The framers of the Ohio Rules of Civil Procedure must have intended to depart from Fed. R. Civ. P. 33 on this point.

Frederick's answers to the interrogatories propounded to Caryl Richards were made under oath and introduced into evidence. They acquire the same status as evidence, as if the statements had been made under oath at the trial and are binding upon Caryl Richards as admissions against interest or judicial admissions. For the binding effect of judicial admissions, see *Winkler* v. *City of Columbus,* 149 Ohio St. 39.

We conclude that the trial court erred to the prejudice of plaintiffs in admitting, over objection, the testimony of Ganschinietz which impeached or rebutted the admissions of Frederick in his answers to interrogatories. Frederick's answers were the answers of Caryl Richards, a party-defendant in this action.

The second error assigned is that the trial court erred in instructing the jury on the subject of assumption of the risk.

The record discloses that the trial court charged the jury on the question of assumption of the risk. In *Briere* v. *Lathrop Co.,* 22 Ohio St. 2d 166 at 174, 175, the Supreme Court referred to the doctrine of assumption of the risk, as follows:

''Assumption of the risk requires three elements: One must have full knowledge of a condition; such condition

must be patently dangerous to him; and he must voluntarily expose himself to the hazard created."

The evidence in this case does not warrant the instruction given and the trial court erred to plaintiffs' prejudice in giving such instruction.

The third error assigned is that the trial court erred in overruling plaintiffs' motion for a new trial because the verdict was not sustained by the evidence and was contrary to the weight of the evidence.

The issues between plaintiffs and Caryl Richards are: (1) Was Caryl Richards negligent? (2) What was the proximate cause of the injury? (3) Was plaintiff Gregory Saum negligent so as to contribute to his injuries? (4) Did plaintiff Gregory Saum assume the risk of a known danger?

Assumption of the risk was not properly an issue because it was not warranted by the evidence and that question will not be given any further consideration.

Plaintiffs' amended petition alleges that Caryl Richards manufactured and sold the dryer and chair. The answers of Frederick to plaintiffs' interrogatories show conclusively that Caryl Richards sold the chair-dryer equipment in question; that Caryl Richards purchased the same from Veeco and that the equipment included the vertical cylinder containing the spring assembly which caused plaintiff's injury. Such answers are binding upon Caryl Richards.

Counsel for Caryl Richards read into evidence certain interrogatories it had propounded to Veeco, together with Veeco's answers thereto which show that Veeco entered into a contract with Caryl Richards for the manufacture, construction and sale of hair dryer assemblies. Veeco described the agreement as follows, in the answer to interrogatory No. 4:

"Apparently such agreement was made with Caryl Richards, Inc. in the latter part of 1957 and related to the sale of certain hair dryer assemblies (hereafter more fully described). By memory we can state that there was documentation of such agreement, but we no longer have

original or copy as such apparently having been disposed of prior to our having any knowledge of this litigation or the subject matter thereof. Basically, the agreement was for us to manufacture for Caryl Richards, Inc. four models of hair dryers, being Models B-500, B-600, S-1000 and S-2000. Model B-600 consisted of three parts, being respectively, a dryer head, tube set and base. The dryer head (which contained a motor, fan and heat elements) was to have certain exterior and appearance variations as required by Caryl Richards, Inc. to make it look different from comparable commercial use appliances sold by others, and was to carry the nameplate on the front showing the name 'Caryl Richards,' 'Bel-Aire Hair Dryer' and a serial number. The agreement further called for us to drop ship these commercial use appliance units upon receipt of order from Caryl Richards, Inc. and for which Caryl Richards, Inc. paid us. Each such appliance unit was supplied with a guarantee registration card upon which there was contained a warning in large letters about compressing the chrome tube of the tube set, or leaving it compressed, in absence of the dryer head being in place.''

In answer to other interrogatories, Veeco stated that it manufactured the dryer head in question for Caryl Richards, but that it did not know whether it manufactured and sold the cylindrical column and spring assembly in question.

In Restatement, Torts 2d, Section 400, p. 337, cited by plaintiff, it is said:

''One who puts out as his own product a chattel manufactured by another is subject to the same liability as though he were its manufacturer.''

The Court of Appeals for Stark County came to the same conclusion in *Mobberly* v. *Sears, Roebuck & Co.*, 4 Ohio App. 2d 126. (See paragraph 4 of the syllabus.)

In paragraph 7 of the headnotes in *Carney* v. *Sears, Roebuck & Co.* (C. C. A. 4, 1962), 309 F. 2d 300, it is stated:

''One who puts out as his own product chattels made by others is under a duty to exercise care, proportionate to danger involved in use of the chattels if improperly made

to secure adoption of a proper formula or plan and use of safe materials and to inspect the chattel when made, but even by doing so he does not escape liability and he is liable if, because of some negligence in its fabrication or through lack of proper inspection during process of manufacture, the article is in a dangerous defective condition which the vendor could not discover after it was delivered to him.''

The evidence shows that the dryer head weighed 16 lbs., and that when it was placed on the vertical telescoping column it required 40 lbs. weight to depress the spring in the column so that it could be adjusted to the desired height and that the function of the set screw was to keep it at the desired height.

There is uncontradicted evidence in the testimony of Dr. Woods, professor of mechanical engineering at the University of Dayton (who teaches principles of design materials and processes), in the testimony of Duncanson (an employee of Rayette), and in the testimony of Ganschinietz (manager of Rayette and shown to be the designer of the hair dryer and tube-spring assembly) to the effect that if the hood or hair dryer head is removed from its supporting column while the spring had a load on it and while the tube is retracted, a dangerous condition is created. Duncanson said that the spring force place in the mechanism was excessive for the weight of the hair dryer and that the device was unsafe with or without a warning label. Ganschinietz testified that in 1953 Rayette recognized the hazard of the device and redesigned its hair dryer assembly by making the dryer head an integral part of the tube so as to avoid the risk of injury to someone not properly instructed in its use.

The evidence shows that the designer of the hair dryer and tube-spring assembly was Rayette, a division of Faberge and that the manufacturer was Veeco. Veeco, in its answers to interrogatories of Caryl Richards, stated ''Each such appliance unit was supplied with a guarantee registration card upon which there was contained a warning in large letters about compressing the chrome tube of the

tube set, or leaving it compressed, in absence of the dryer head being in place.''

Thus, the manufacturer recognized the potential danger involved in the use for which the hair dryer was intended. The means of warning of such danger selected by Veeco was wholly inadequate because the warning was not attached to the apparatus. Veeco should have foreseen that persons other than the one to whom the warning card was delivered would be exposed to the danger involved and probably would be injured in the absence of an adequate warning of the danger involved.

The manufacturer of the hair dryer assembly, Veeco, had the duty to secure the adoption of a design for its manufacture which could be safely used for its intended purpose. The evidence shows that Veeco knew that the design here was so defective as to produce a potentially dangerous apparatus and as to require an adequate warning of the danger involved and that Veeco had a duty to adequately warn users and handlers of the equipment. The evidence shows that Veeco failed to discharge its duties. Such failure constitutes negligence. The evidence shows that such negligence was a proximate cause of the injuries in question.

Because the evidence shows that Caryl Richards sold the hair dryer assembly as its own product, it had the same duties as the manufacturer set forth above.

The evidence supports a conclusion that Caryl Richards failed in its duties outlined above and that such failure constituted negligence which was a proximate cause of the injuries.

The next question is whether plaintiff Gregory Saum was negligent in turning the set screw so as to release the vertical rod causing it to shoot upward and strike him and, if so, whether such negligence was a proximate cause of his own injuries.

''Contributory negligence on the part of plaintiff is a bar to an action only when it proximately contributes to the infliction of the injury; and if the damage is not the necessary, ordinary or likely result of such contributory

negligence, but is due to some wholly unlikely fact or unexpected event which could not reasonably have been anticipated or regarded as likely to occur, such contributory negligence is too remote to be a bar to an action." *Transcontinental Car Forwarding Co.* v. *Sladden, Admx.,* 49 Ohio App. 53, 55; 39 Ohio Jurisprudence 2d 532, 533, Negligence, Section 30.

The issue of contributory negligence ought to be submitted to the jury if there is "some evidence * * * tending to show that the plaintiff failed in some respect to exercise the care of an ordinary prudent person * * * and that such failure was a proximate cause of his injury * * *." *Bush* v. *Harvey Transfer Co.,* 146 Ohio St. 657, 670. "Where reasonable minds could differ on the question, the issue is for the jury." *Smith* v. *Toledo and Ohio Central Railroad Co.,* 133 Ohio St. 587.

Plaintiff Gregory Saum testified that as he and a friend unloaded the chair and hair dryer equipment from the trunk of Mrs. Venick's automobile the dryer head slid off the vertical pole which extended upward from the chair and fell into her arms. He stated that he loosened the set screw expecting the pole to descend of its own weight and that he did so in order that she could more easily carry the chair into the house.

The upward thrust of the pole when the set screw was loosened was not an event which reasonably prudent persons should have anticipated or regarded as likely to occur. Reasonable minds could come to but one conclusion on the issue of whether plaintiff's action in loosening the set screw was a proximate cause of his injury and that conclusion is that his action was not a proximate cause of his injury.

A general verdict was rendered by the jury in favor of Caryl Richards and against plaintiffs. A conclusion that Caryl Richards was not negligent or that, if negligent, such negligence was not a proximate cause of Gregory Saum's injuries is against the manifest weight of the evidence. A conclusion that young Saum was negligent and that his negligence contributed as a proximate cause of

his injuries is contrary to law. A conclusion that Saum assumed the risk is contrary to law because there is no evidence to support it.

The jury's verdict and the judgment rendered thereon in favor of Caryl Richards against plaintiffs are against the manifest weight of the evidence and contrary to law. For that reason and because of the prejudicial errors of the trial court, previously noted, that judgment will be reversed and the cause will be remanded to that court for further proceedings according to law.

The fourth error assigned is that the trial court erred in directing a verdict in favor of Mrs. Venick and against plaintiffs.

Plaintiffs argue that Mrs. Venick was negligent in failing to warn young Saum of the danger to be encountered in moving the hair dryer.

We see no merit in this assignment of error. There is no evidence to show that Mrs. Venick knew or should have known of such danger and therefore she had no duty to warn him.

The judgment in favor of Venick and against plaintiffs will be affirmed.

*Judgment affirmed in part and reversed in part.*

CRAWFORD and KERNS, JJ., concur.