**OWENS–CORNING FIBERGLAS CORPORATION**

v.

**AMERICAN CENTENNIAL INSURANCE COMPANY et al.**

Court of Common Pleas of Ohio,
Lucas County.

No. CI90–2521.

Decided July 17, 1995.

248

*Connelly, Soutar & Jackson, William M. Connelly* and *Steven Smith; Covington & Burling, Mitchell F. Dolin, Jackson Sharman* and *Eric Lasker; Davis & Young Co., L.P.A.,* and *Martin J. Murphy,* for Owens–Corning Fiberglas Corporation.

*Shumaker, Loop & Kendrick, Peter Silverman* and *William Heywood; Chadbourne & Park, Peter Hillman* and *Debra Petalkis,* for American Centennial Insurance Company.

*Sullivan, Ward, Bone, Tyler, Fiott & Asher, Thomas Slavin* and *Thomas Auth; Mayer, Brown & Platt* and *Michael Gill; Joseph Walsh,* for Protective National Insurance Company.

*Weston, Hurd, Fallon, Paisley & Howley* and *Warren Rosman; Harrington, Foxy, Dubrow & Canter, Mark Flory* and *Melissa Harnett* for Associated International Insurance Company.

———

RICHARD W. KNEPPER, Judge.

This matter is before the court on the motion *in limine* filed by the plaintiff, Owens–Corning Fiberglas Corporation ("OCF"). Upon due consideration of the pleadings, memoranda of counsel, evidence, and applicable law, this court denies OCF's motion in part and grants OCF's motion in part.

*I*

OCF seeks exclusion at trial of a number of exhibits listed by the defendants in their Joint Exhibit List. OCF seeks to exclude the following categories of exhibits: (a) documents relating to the defendants' "expected/intended" defense that were prepared outside the relevant time period, *i.e.,* 1958–1973; (b) records, reports, and documents regarding testing of Kaylo insulation by Saranac laboratories; (c) documents prepared or distributed by the Asbestos Textile Institute, a trade organization to which OCF did not belong; (d) documents relating to the negotiation, underwriting, and placement of Associated's insurance policy; (e) documents relating to notices provided to other excess carriers; (f) a memorandum from OCF's Medical Director, Dr. Konzen, to OCF in-house counsel, R.L. Logan; (g) a memorandum by Duane Callendar, in-house attorney for OCF; (h)

documents relating to workers' compensation claims; and (i) responses to interrogatories responses filed in other noninsurance asbestos cases.

## II

A motion *in limine* is designed "to avoid the injection into a trial of a potentially prejudicial matter which is not relevant and is inadmissible." *Rinehart v. Toledo Blade Co.* (1985), 21 Ohio App.3d 274, 278, 21 OBR 345, 349, 487 N.E.2d 920, 924. In *Riverside Methodist Hosp. Assn. v. Guthrie* (1982), 3 Ohio App.3d 308, 310, 3 OBR 355, 358, 444 N.E.2d 1358, 1360–1361, the court of appeals set forth the required two-step procedure:

"First, a consideration of the motion *in limine* as to whether any reference to the area in question should be precluded until admissibility can be ascertained during trial. Second, at the time when the party desires to introduce the evidence which is the subject of the motion *in limine*, there must be a second hearing or determination by the trial court as to the admissibility of the evidence, which is then determined by the circumstances and evidence adduced in the trial and the issues raised by the evidence."

A motion *in limine* is, therefore, a precautionary request, directed to the inherent discretion of the trial judge. *State v. Spahr* (1976), 47 Ohio App.2d 221, 1 O.O.3d 289, 353 N.E.2d 624.

"The sustaining of a motion in limine does not determine the admissibility of the evidence to which it is directed. Rather it is only a preliminary interlocutory order precluding questions being asked in a certain area until the court can determine from the total circumstances of the case whether the evidence would be admissible." Palmer, Ohio Rules of Evidence Rules Manual (1984), at 446, cited with approval in *State v. Grubb* (1986), 28 Ohio St.3d 199, 201, 28 OBR 285, 288, 503 N.E.2d 142, 145.

The inherent power of a court to control its proceedings is granted to it by Evid.R. 103(A) and 611(A). The use of the motion *in limine* serves the interest of judicial economy as well as those interests of counsel and the parties because it aids in reducing the possibility of the injection of error or prejudice into the proceedings. *Grubb, supra.*

## III

A. Documents Relating to the Defendants' Expected/Intended Defense that Were Prepared Outside the Relevant Time Period

OCF argues that any documents generated during a time OCF was not manufacturing asbestos products should be excluded from evidence. The defendants must show that OCF expected or intended the injuries from asbestos

during the time OCF was manufacturing asbestos-containing products. According to OCF, the pertinent years were 1958–1973. OCF, therefore, argues that any documents generated when OCF was not manufacturing asbestos-containing products are irrelevant and any relevance is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. "Unfair prejudice" does not mean damage to a party's case that "results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on an improper basis." (Citations omitted.) *United States v. Mendez–Ortiz* (C.A.6, 1986), 810 F.2d 76, 79.

This court finds that any information OCF had regarding the dangers of asbestos prior to its period of manufacturing asbestos-containing products is entirely relevant. OCF's knowledge of the dangers of asbestos goes directly to the issue of whether OCF expected or intended, during manufacturing, the resulting injuries from its products. The court further finds that OCF would not be unfairly prejudiced by such information. Accordingly, OCF's motion to exclude all pre–1958 documents is denied.

■ OCF seeks to exclude post–1973 documents on the basis that the expected/intended defense goes only to OCF's knowledge during its period of manufacturing of asbestos-containing products. The defendants, on the other hand, argue that OCF continued to manufacture asbestos-containing products after the 1973 cut-off suggested by OCF, that the documents cannot be neatly partitioned into fraud and expected/intended defense categories, and that records created by asbestos producers after they stopped making asbestos products are routinely admitted into evidence to show knowledge, intent and disregard of the dangers of asbestos.

The court, however, finds that the post–1973 documents are also relevant to this case and will not be excluded from the evidence presented at trial. Regardless of when the records or documents were created, if they demonstrate that OCF knew of the dangers associated with asbestos while it was manufacturing asbestos-containing products, then the evidence is probative of the expected/intended defense. Additionally, any post–1973 evidence is relevant to the defense of fraud, as all of the insurance policies in question were entered into after 1973. Accordingly, OCF's motion regarding all post–1973 documents is denied.

B.  Saranac Laboratories' Studies, Records, Reports and Documents Regarding Testing of Kaylo Insulation

■ OCF moves for exclusion of all records, reports and documents regarding the studies done by Saranac laboratories for Owens–Illinois on Kaylo insulation.

OCF argues that unless the defendants can prove actual receipt by OCF of each record, report, and related documents, the evidence must be excluded, as OCF did not have notice of them. The court, however, finds that OCF had actual or implied knowledge of all Saranac laboratories' findings.

■ At the time the Saranac testing was being done for Owens–Illinois, Urban Bowes was both head of Owens–Illinois' Kaylo Division and Director of OCF. Correspondence between Saranac laboratories and Bowes indicates that Bowes was aware of both the testing and the findings of the Saranac studies. Because Bowes was Director of OCF during the time the Saranac studies were being conducted, his knowledge of the studies was imputed to the corporation. See *London & Lancashire Indemn. Co. v. Fairbanks Steam Shovel Co.* (1925), 112 Ohio St. 136, 149, 147 N.E. 329, 333; *First Natl. Bank of New Bremen v. Burns* (1913), 88 Ohio St. 434, 103 N.E. 93; *Orme & Okey v. Baker* (1906), 74 Ohio St. 337, 78 N.E. 439; *Hey v. Cummer* (1950), 89 Ohio App. 104, 119, 45 O.O. 392, 398–399, 97 N.E.2d 702, 710–711.

In addition to Bowes' knowledge, the defendants have presented the testimony of Dr. Schepers, then Director of Saranac, which indicates that Dr. Schepers gave two dozen OCF executives a day-long seminar on the dangers of asbestos in 1956. Dr. Schepers used his Kaylo studies as the cornerstone of his presentation. The defendants also offer testimony from Owens–Illinois' industrial hygienist and record custodian who both indicate that OCF was provided all the information Owens–Illinois had on the Saranac documents.

This court finds that the information regarding the Saranac studies is relevant to the question of whether OCF expected or intended the injuries caused by its asbestos-containing products. The court further finds that OCF will not be unfairly prejudiced by such information. Based on all the foregoing evidence of OCF's actual or imputed knowledge of the Saranac studies and findings, this court denies OCF's motion regarding the Saranac studies, reports, records and related documents.

C. Documents Prepared or Distributed by the Asbestos Textile Institute

■ OCF argues that the defendants seek to include evidence of the knowledge of other manufacturers who were members of the Asbestos Textile Industries ("ATI"), a trade organization to which OCF did not belong. The court grants OCF's motion. Any reference to the information prepared or distributed by ATI or any other organization to which OCF was not a member is precluded unless and until admissibility of such evidence can be ascertained during trial. See *Grubb, supra.*

D.  Documents Relating to the Negotiation, Underwriting, and Placement of Associated's Insurance Policy

OCF argues that the only available defense remaining to Associated International Insurance Company ("Associated") is the "expected or intended" defense. Associated, however, asserts that this court's prior opinion and judgment entry ruling on the parties' motions for summary judgment did not preclude Associated from pursuing its claim of concealment, as alleged by the other defendants and as included in Associated's pleadings.

This court finds that evidence relating to the negotiation, underwriting, and placement of Associated's insurance policy should not be excluded.  The court's opinion focused on a narrow portion of Associated's defense of fraud, specifically Associated's allegations that it was defrauded regarding the asbestos exclusion relating to the Fry/Trumbull division.  The court found that Associated knew of this alleged fraud in 1979, during the policy year.  Having made this finding the court held that Associated's allegation of fraud or misrepresentation on the basis of the Fry/Trumbull exclusion was untimely, as the statute of limitations had expired and the doctrine of laches precluded the claim.

The court, however, did not address the issue of concealment by OCF during its negotiations with Associated.  Therefore, this court has not precluded Associated from pursuing its allegation of concealment in the negotiation and underwriting of its policy with OCF.  Accordingly, OCF's motion regarding the documents relating to the negotiation, underwriting, and placement of Associated's insurance policy is denied.

E.  Documents Relating to Notices Provided to Other Excess Carriers

OCF moves for exclusion of evidence relating to a notice provided by OCF to its pre–1979 excess insurance carriers.  The notice followed a decision by Aetna on December 6, 1979 to reserve its right to switch to the exposure approach of coverage.  OCF seeks exclusion of this evidence because it argues that these documents are relevant only to the issue of whether timely notice of OCF's asbestos claims was provided to the defendants.  And, because the court already decided the issue of notice in its opinion and judgment entry ruling on the parties' motions for summary judgment, these documents are irrelevant to the remaining issues at trial.  The defendants, on the other hand, assert that the documents providing notice to other excess carriers is probative of the issue of fraud.

This court finds that the documents relating to the notice provided to pre–1979 excess carriers is relevant.  The evidence would serve to make an issue of consequence more probable or less probable than it would be without such

evidence. OCF had a duty to disclose information with the utmost good faith during its insurance contract negotiations with the defendants. The notice provided to other excess carriers is evidence of OCF's knowledge of its asbestos claims and the amount of underlying excess coverage OCF had during its policy negotiations with the defendants. The jury must have the evidence before it to determine whether the notice provided to other excess carriers needed to be given to the defendants and, if OCF was required to provide such information, but failed to, whether that failure constituted fraud.

This court finds that the documents concerning notice provided to other excess carriers is probative to the issue of fraud. The court further finds that no unfair prejudice will befall OCF because of the inclusion of this evidence at trial. OCF's motion regarding the exclusion of evidence relating to notice of Aetna's coverage provided to other excess insurance carriers is denied.

F. Dr. Konzen's Memorandum

█ OCF argues that the memorandum prepared by Dr. Konzen, OCF's Medical Director in 1968, for OCF's in-house counsel, R.L. Logan, should be excluded. Dr. Konzen provided medical opinions relating to the circumstances surrounding a plaintiff's exposure to asbestos in the Texas federal court case brought by Claude Tomplait.

Specifically, Dr. Konzen was assigned to help answer interrogatories regarding the *Tomplait* case. In a memorandum dated February 9, 1968, Dr. Konzen responded to one of Tomplait's interrogatories that asked whether OCF recognized that prolonged use of its insulation materials could "cause or contribute to cause" asbestosis and other occupational diseases. Dr. Konzen responded in his memorandum to OCF's in house counsel:

"[T]he point of these questions appears to be to establish that asbestosis was a well known entity to industrial medical practice over the entire period that Mr. Tomplait handled asbestos containing insulation. The answer to the three questions can be summed up by saying that the condition was well known and well documented in the literature during the entire time that Mr. Tomplait used the insulation." (Defendants' Joint Exhibit 511.)

Although notified by Dr. Konzen regarding the knowledge of asbestosis in the industrial medical community, OCF responded to the interrogatory as follows:

"Owens–Corning does not recognize that the result expressed in this question could occur and specifically denies that such could occur."

Further, when OCF was asked to explain its response, OCF stated that it "ha[d] no information or belief that prolonged use of its products containing asbestos fibers [would] cause 'asbestosis.' "

As determined in *Owens–Corning Fiberglas Corp. v. Watson* (1992), 243 Va. 128, 413 S.E.2d 630, this court will not allow OCF to invoke the attorney-client privilege with regard to the Konzen memorandum. The court in *Watson* held that OCF committed a fraud upon the Texas court in *Tomplait* when it answered the interrogatories under oath with a response OCF knew was patently false. *Watson, supra,* 243 Va. at 142, 413 S.E.2d at 639. The *Watson* court further held that the "[e]xclusion of the Konzen memorandum from evidence would merely perpetuate the original fraud upon the Texas court." *Id.*

This court agrees that the Konzen memorandum reveals a fraud upon the Texas court. In *Coulson v. Coulson* (1983), 5 Ohio St.3d 12, 15, 5 OBR 73, 76, 448 N.E.2d 809, 811, the Supreme Court defined the concept of "fraud upon the court," as follows:

" 'Fraud upon the court' should, we believe, embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by the officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication."

Accordingly, the Konzen memorandum having revealed a fraud on the Texas court, this court finds that the attorney-client privilege cannot bar introduction of the Konzen memorandum at trial in this matter. The attorney-client privilege "does not permit a litigant to commit fraud upon a court." *Watson, supra,* 243 Va. at 141, 413 S.E.2d at 638. Similar to the holding in *Watson,* this court finds that exclusion of the Konzen memorandum, in this case, would perpetuate OCF's fraud on the Texas judiciary. OCF's motion regarding Dr. Konzen's memorandum is denied.

G. Duane Callendar's Memorandum

OCF asserts that the unredacted version of Duane Callendar's memorandum dated October 14, 1980, must be excluded from trial, as portions of the memorandum are privileged and/or fall under the work product doctrine.

The memorandum is relevant to the question of whether OCF knew asbestos was causing injuries. Callendar investigated workers' compensation claims from the 1950s and 1960s and other related correspondence. He determined that "Toledo, at least the Insurance Department, was aware of the [asbestos] problem in the early 1960's."

OCF has repeatedly asserted it was not aware of the dangers of asbestos until the late 1960s. Evidence indicating that OCF knew of the dangers earlier than it admitted goes to the issue of whether OCF either expected or intended the injuries caused by asbestos or whether OCF misrepresented the asbestos situation to its potential insurance carriers during policy negotiations. The Callendar

memorandum would, potentially, expose misrepresentations made by OCF. The Callendar memo being probative to the defenses of expected/intended and fraud, the court finds it admissible. This court, therefore, denies OCF's motion regarding exclusion of the Callendar memorandum at trial.

## H. Documents Relating to Workers' Compensation Claims

OCF seeks exclusion of documents relating to workers' compensation claims filed against OCF. This court finds that evidence of workers' compensation claims filed against OCF for asbestos-related injuries is relevant to the issue of when OCF was aware of the dangers of asbestos.

The defendants represent that they have a limited number of workers' compensation claims to present, contrasted with the voluminous nature of the evidence sought to be admitted in the case of *In re Related Asbestos Cases* (N.D.Cal.1982), 543 F.Supp. 1152. This court, therefore, finds that the trial will not suffer from undue delay or unnecessary confusion by the jury. OCF's motion to exclude the evidence regarding asbestos related workers' compensation claims filed against OCF is denied.

## I. Interrogatory Responses Filed in Other Noninsurance Asbestos Cases

OCF asserts that its responses to interrogatories in other litigation should be excluded as evidence in this case because it is irrelevant, composed of hearsay, and substantially prejudicial. This court grants OCF's motion in this regard.

Answers to interrogatories "may be used to the extent permitted by the rules of evidence." Civ.R. 33(B). Accordingly, under Ohio law, answers to interrogatories, being statements made under oath by a party, are admissible in evidence as admissions against interest or judicial admissions. *Saum v. Venick* (1972), 33 Ohio App.2d 11, 15, 62 O.O.2d 49, 51, 293 N.E.2d 313, 316. See Evid.R. 801(D)(2) (party's statement offered against it is an admission and not hearsay). Accordingly, this court finds that responses to interrogatories are not hearsay.

The court, however, fails to see the relevancy of responses to interrogatories in other litigation. Additionally, this court fears that introduction of such evidence may cause unnecessary confusion in the jury. Accordingly, this court grants OCF's motion.

No reference may be made at trial regarding OCF's responses to interrogatories made in other litigation unless the court ascertains, during the course of trial, under the circumstances and evidence adduced in the trial and the issues raised by the evidence, that the evidence is admissible and would not unnecessarily confuse the jury. See *Riverside Methodist Hosp., supra.*

## JOURNAL ENTRY

It is ORDERED that Owens–Corning Fiberglas Corporation's motion *in limine* to exclude certain evidence at trial is denied in part and granted in part.

*Judgment accordingly.*